**In re Carole J. McCORMICK, Debtor.**

**Carole J. McCORMICK, Plaintiff,**

**v.**

**MID–STATE BANK AND TRUST COMPANY, Defendant.**

**Bankruptcy No. 81–1993.
Adv. No. 81–1750.**

United States Bankruptcy Court,
W. D. Pennsylvania.

March 24, 1982.

Terrence E. Tomassetti, Goodman, Noto-poulos, Silverman & Croyle, Altoona, Pa., for defendant.

James H. English, Altoona, Pa., for debtor/plaintiff.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The Debtor, Carole J. McCormick, filed a Petition under Chapter 7 of the Bankruptcy Reform Act of 1978 ("BRA") on July 29, 1981. Listed as secured creditors were Mid-State Bank and Trust Company, Altoona, Pennsylvania ("Mid-State") and Household Finance Corporation ("HFC"). Mid-State is the owner of a mortgage on the Debtor's residence which was recorded on July 28, 1976, and has an outstanding balance of $9,873.80. Mid-State also holds a Judgment against the Debtor originally dated April 7, 1978, which was rewritten and entered on December 21, 1978, upon which $3,733.00 is due. HFC is the owner of a non-purchase money security interest in the Debtor's household goods in the amount of $5,000.00. The date of perfection of HFC's security interest is not specified. Listed as assets by the Debtor are a residence owned in fee simple with an estimated value of $12,-000.00 and personalty worth $635.00. The Debtor claimed as exempt $2,126.20 of value in her residence pursuant to 11 U.S.C. § 522(d)(1) and $635.00 of value in personalty under 11 U.S.C. § 522(d)(1) and (5).

The Debtor filed a Complaint to Avoid Judicial Liens in which she claimed that Mid-State's judicial lien impaired her exemption in her residence and requested that it be avoided pursuant to 11 U.S.C. § 522(f)(1). Mid-State filed an Answer in which it stated that the judicial lien was acquired prior to the effective date of the Bankruptcy Reform Act and, therefore, to allow the lien to be avoided would constitute a retroactive taking of a property right in violation of its right to substantive due process under the Fifth Amendment of the U. S. Constitution.

A hearing was held on November 13, 1981. The following findings of fact were made. The Debtor's residence has a fair market value of $12,000.00. A deed was recorded on August 13, 1981, fifteen days after the Debtor filed her petition. The deed evidenced a transfer on July 22, 1981, from the Debtor and her husband as tenants by the entireties to the Debtor individually. The Debtor was divorced on August 20, 1981. The parties were requested to submit briefs on the constitutional issue.

In its brief Mid-State does not address the constitutional question and instead attacks the validity of the conveyance. Mid-State raises the possibility of fraud by the Debtor and her husband because the transfer occurred seven days prior to the Debtor filing her petition. Mid-State argues that if the conveyance had not occurred, it would retain its lien against the husband's half interest because the Debtor could claim an exemption only in her half of the property. The conveyance had the effect of subjecting the entire lien to being avoided under the Debtor's exemption right pursuant to § 522(f)(1). Mid-State requests that the conveyance be set aside but does not cite any provisions of the Bankruptcy Code which either permits or requires the Court to grant such relief.

Mid-State argues in the alternative that the Court should permit only one-half of the Debtor's remaining equity in her residence to be exempted and to allow it to enforce its lien against the remaining equity.

Mid-State's final argument concerns whether title had vested in the Debtor prior to her petition. It requests a rehearing, if the Court should not find in its favor on the above arguments, to determine whether the parties had completed the conveyance under Pennsylvania law prior to the filing of the Petition. Mid-State is particularly concerned with whether the deed was delivered prior to the petition date.

The Debtor argues in her brief that Mid-State waived its right to raise the defense of fraud by failing to raise it in its original Answer. The Debtor addresses the ques-

tion as to whether Mid-State is the owner of one or two judicial liens. There is some confusion in the pleadings as to whether the Judgment recorded on December 21, 1978 replaced an earlier Judgment recorded April 7, 1978, or is in fact a second Judgment based on a separate debt. The Debtor argues that the later Judgment is the only valid lien against her property. She acknowledges that the judgment lien obtained December 21, 1978 is a "Gap Judgment", i.e., entered after the B.R.A. was passed, November 6, 1978, but prior to its effective date, October 1, 1979. Cited in support of her position that such a judicial lien can be avoided without violating Mid-State's right to due process is *In re Noland*, 13 B.R. 766, 4 C.B.C.2d 1498 (Bkrtcy.1981). Finally, the Debtor alleges that the transfer was part of a good faith marital settlement prior to the divorce.

ISSUES

There are three issues before the Court. The first is whether a Debtor can avoid a judicial lien pursuant to Section 522(f)(1) when the lien had attached prior to the Debtor's acquisition of the property? The second issue is whether the avoidance of a judicial lien pursuant to § 522(f)(1) which was acquired subsequent to the passage of the Bankruptcy Reform Act but prior to its effective date violates the lien holder's constitutional right to substantive due process of law? The third issue is whether a defendant is permitted to raise the affirmative defense of fraud when it had failed to do so in its Answer to the Debtor's Complaint to Avoid Judicial Liens?

The resolution of the first issue is dependent upon our interpretation of the phrase "the fixing of a lien on an interest of the debtor in property," which appears in 11 U.S.C. § 522(f). Section 522(f) provides in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such a lien is—

(1) a judicial lien ...

Legislative history provides some indication of the congressional reasoning behind § 522(f):

... the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may avoid any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions ... H.R.Rep.No.595, 95th Cong., 1st Sess., *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 6087.

The House Report indicates that § 522(f) is intended to protect the Debtor from creditor action against his "unencumbered" property. The Report states that the avoidance right "allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy." The phrase suggests that Congress is concerned that when a Debtor becomes unable to meet his financial obligations, creditors will take quick action to reduce their claims to judgment. The consequence being that the Debtor will not retain any unencumbered property. Thus when he does file a bankruptcy petition, all his property could be encumbered. He would, therefore, be unable to take advantage of his exemption rights. We believe the Report contains the implicit assumption that the Debtor must have acquired the property interest "before" the creditor attached a lien to it. It is unreasonable in light of the Report's language to attribute to Congress an intent to allow a Debtor to void a lien which had attached to property prior to its acquisition by the Debtor. Such a construction would encourage collusive transfers. For example, an individual could convey encumbered property to an indigent person who would then file a bankruptcy petition, avoid the lien, and reconvey the property to

the original owner. This Court does not believe that Congress intended § 522(f) to be used as a device to defraud judicial lien holders.

The language of § 522(f) states that a Debtor can avoid "the fixing of lien on an interest in property of the debtor." The use of the word "fixing" rather than "fixed" and the phrase "an interest in property of the debtor" rather than "property of the debtor" prohibits the avoidance of a lien which has attached prior to the Debtor's acquisition of the property. In other words, "Congress intended the avoidance of liens that became fixed 'after' the debtor acquired the interest upon which they became fixed." *In re Scott*, 12 B.R. 613 (Bkrtcy. 1981).

The Court has uncovered only two cases which address this question. In *Stephens v. Walter E. Heller Western, LTD.*, 15 B.R. 485 (Bkrtcy.1981), a Debtor transferred property to which judicial liens had already attached and then reacquired the property. The Debtor then filed bankruptcy and attempted to avoid the liens pursuant to § 522(f)(1). The Court held that "when the debtor reobtained the property he did so subject to the judgment liens thereon and his extent of ownership did not include that portion of the property encumbered by the judgment liens, and, therefore, he cannot claim an exemption therein." *Id.*, 486.

*In re Scott*, supra, was concerned with a Debtor who had acquired her ex-husband's interest in their marital home as part of a property settlement pursuant to a divorce. The divorce decree gave the husband a lien on the property to secure payment of the property settlement and had operated to convey the husband's interest to the wife. The wife filed a voluntary petition under Chapter 7 after her former husband instituted foreclosure proceeding for nonpayment. The Debtor sought to avoid her ex-husband's lien pursuant to § 522(f)(1). The Court held that she could not do so because the property was conveyed subject to the lien and, therefore, was not "a lien on an interest of the debtor in property." *Id.*, 615. The Court also held that the hus-

band's lien was a security interest and not a judicial lien. *Id.*, 618.

■ The Court agrees with the interpretation of § 522(f) presented in *Scott* and *Stephens*. The legislative history and the language of the section indicate that the phrase "an interest of the debtor in property" refers to an unencumbered interest at the time of acquisition. In other words, a judicial lien which had attached to an interest in property prior to the Debtor's acquisition of that interest is not avoidable pursuant to § 522(f)(1).

Based upon the above reasoning, the Debtor's right to avoid Mid-State's judicial lien depends upon whether the interest in property which the Debtor claims is exempt was acquired subject to Mid-State's lien. The resolution of this issue is to be determined by reference to Pennsylvania law.

■ The Debtor admits that Mid-State obtained a joint judgment against the Debtor and her husband when they owned their residence as tenants by the entireties. According to Pennsylvania law, a joint judgment against both spouses subjects their entireties property to the judicial lien. *A. Hupfel's Sons v. Getty*, 299 F. 939 (3rd Cir. 1924); *Consumers Times Credit, Inc. v. Remark Corp.*, 248 F.Supp. 158 (1965). The conveyance to the Debtor individually did not alter the lien since under Pennsylvania law a conveyance of encumbered property does not affect the lien. *Ellinger v. Krach*, 150 Pa.Super. 384, 385, 28 A.2d 453 (1942) *affirmed* 346 Pa. 52, 29 A.2d 677. It is clear that under Pennsylvania law the Debtor acquired her residence subject to Mid-State's judicial lien. Therefore, this Court is compelled to hold that the Debtor cannot avoid Mid-State's judicial lien since the interest in property she seeks to exempt was acquired subject to the lien.

It should be noted that § 522(f) is not the sole means to avoid a lien. This Court recently construed § 506(a)(d) to permit the avoidance of a lien of an undersecured creditor to the extent which the lien exceeds the value of the collateral. *In re Tanner*, 8 B.C.D. 347 (Bkrtcy.1981).

Since this Court has determined that Mid-State's lien is not avoidable pursuant to § 522(f)(1), it is unnecessary to address the constitutional and procedural issues.