FILED

JAN 04 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.  SC-12-1218-JuMkPa |
| ) | |
| CONRAD J. KUIKEN, JR., ) | Bk. No.  11-17454 |
| ) | |
| Debtor. ) | |
| ) | |
| _____) | |
| ) | |
| DANIEL T. MCCOY, ) | |
| ) | |
| Appellant, ) | |
| v. ) | OPINION |
| ) | |
| CONRAD J. KUIKEN, JR., ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Submitted Without Oral Argument on November 15, 2012[*]

Filed - January 4, 2013

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret M. Mann, Bankruptcy Judge, Presiding

_____

Appearances:    James C. Mitchell, Esq. on brief for appellant
Daniel T. McCoy.

_____

Before:  JURY, MARKELL, and PAPPAS Bankruptcy Judges.

_____

[*]  On October 30, 2012, appellant moved to submit this appeal without oral argument.  The Panel unanimously determined that oral argument was not needed by order entered on October 31, 2012.

JURY, Bankruptcy Judge:

Judgment creditor Daniel T. McCoy appeals from the bankruptcy court's order granting debtor Conrad J. Kuiken, Jr.'s motion to avoid McCoy's judicial lien under § 522(f).[1] In a case of first impression in this circuit, we hold that because the debtor did not maintain a continuous interest in the property subject to the lien from the time the lien fixed until the petition date, he is not entitled to avoid the lien based on his homestead exemption. Therefore, we REVERSE.

## I. FACTS[2]

On August 18, 2003, debtor acquired fee title to real property located in San Diego, California.

On June 4, 2009, McCoy obtained a judgment against debtor in the San Diego Superior Court, Civil Case No. 37-2007-0052760.

On October 9, 2009, McCoy recorded with the San Diego County Recorder's Office a $16,838 judgment lien in the form of an abstract of judgment.

On July 5, 2011, debtor executed a grant deed conveying fee title to the property to Bayview Resources, LLC (Bayview), for valuable consideration. The deed was duly recorded on July 15,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] McCoy contends that the facts are undisputed. Debtor has not participated in this appeal.

-2-

2011.

On September 28, 2011, Bayview executed a grant deed conveying fee title to the property to debtor as a gift. The deed was duly recorded on October 11, 2011.

On October 24, 2011, debtor filed his chapter 7 petition. In Schedule A, debtor listed the property as owned by Bayview[3] and showed the value of the property as $530,000 encumbered with a secured claim in the amount of $532,969. In Schedule C, debtor claimed the property exempt under Cal. Civ. Proc. Code (CCP) § 704.730(a)(1)[4] in the amount of $13,869. No objections to his claim of exemption were filed. In Schedule D, debtor listed McCoy as a secured creditor with an October 9, 2009 judgment lien for $16,838 in the form of an abstract of judgment against the property.

On January 19, 2012, debtor filed a motion to avoid McCoy's judicial lien under § 522(f). In the accompanying declaration,

---

[3] This listing was most likely an error as the record shows Bayview transferred the property back to debtor prior to his bankruptcy.

[4] CCP § 704.730 only specifies the amount of an exemption. From the record provided, it appears that debtor relied on California's automatic homestead exemption. The requirements to qualify for an automatic homestead exemption are set forth in CCP § 704.710(c):

> Homestead means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead.

-3-

debtor declared that he resided in the property at the time of filing his petition.

On February 6, 2012, McCoy objected to debtor's motion on the grounds that (1) McCoy's judicial lien became a consensual lien when debtor conveyed the property to a third party for valuable consideration and reacquired it subject to the judicial lien and (2) McCoy's judicial lien had priority under California law over debtor's interest in the property and his homestead exemption when debtor reacquired the property from Bayview.

On February 21, 2012, the bankruptcy court issued a tentative ruling rejecting McCoy's arguments. The bankruptcy court found no authority for the premise that a judicial lien is transformed into a consensual lien due to the transfers of the property. In addition, the court found that the parties agree that debtor owned his house both when the lien attached and when the motion to avoid the lien was brought. The court noted that in Culver, LLC v. Kai-Ming Chiu (In re Chiu), 304 F.3d 905 (9th Cir. 2002), the debtor owned his residence at the time the judgment lien was fixed to it and could avoid the lien even though he no longer owned the house at the time he filed the motion to avoid the lien. The bankruptcy court found that Chiu's reasoning applied "with equal force here."

After McCoy filed a supplemental opposition, the bankruptcy court issued a second tentative ruling on March 21, 2012. The bankruptcy court reiterated that at all times McCoy's judicial lien remained a judicial lien upon the property. Citing Law Offices of Moore & Moore v. Stoneking (In re Stoneking), 225 B.R. 690, 696 (9th Cir. BAP 1998), the court further found that

-4-

although debtor's property interest may have changed after McCoy's lien fixed, it did not affect debtor's ability to avoid the lien. Because the debtor's homestead exemption was applicable as of the petition date, the court further found that debtor was entitled to avoid McCoy's judicial lien at that time.

The bankruptcy court entered the order granting debtor's motion to avoid McCoy's judicial lien on April 13, 2012. McCoy timely appealed the order.[5]

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in granting debtor's motion to avoid McCoy's judicial lien under § 522(f)(1).

## IV. STANDARD OF REVIEW

Where there are no material disputed facts, whether a creditor's judicial lien is avoidable under § 522(f) is a question of law reviewed de novo. In re Stoneking, 225 B.R. at 692.

## V. DISCUSSION

Section 522(f)(1) provides, in pertinent part, that a

---

[5] 9th Cir. BAP Rule 8006-1 provides: "The excerpts of the record shall include the transcripts necessary for adequate review in light of the standard of review to be applied to the issues before the Panel. . . ." McCoy did not include a transcript in the record on appeal. Because our review is de novo, we have determined the transcript is not necessary to our review.

debtor:

> [M]ay avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is
>
> (A) a judicial lien. . . .

"[U]nder § 522(f)(1), a debtor may avoid a lien if three conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." In re Chiu, 304 F.3d at 908 (quoting Catli v. Catli (In re Catli), 999 F.2d 1405, 1406 (9th Cir.1993)). On appeal, McCoy contends that the first and third conditions have not been met.[6]

McCoy does not dispute that debtor held an interest in the property before McCoy's lien fixed. Nonetheless, McCoy contends that debtor's conveyance of the property to Bayview resulted in a termination of debtor's previous interest and then, when debtor reacquired the property from Bayview, debtor obtained a "new interest" in the property which came after the fixing of McCoy's lien. According to McCoy, these facts fall squarely within the holding of Farrey v. Sanderfoot, 500 U.S. 291 (1991) which makes his lien unavoidable. As a result, McCoy argues that the bankruptcy court erred in relying on the holdings in Stoneking and Chiu for its decision.

McCoy is correct that the debtor's conveyance of the property to Bayview terminated his existing interest in the

---

[6] The second condition, that the debtor had an exemption which was impaired, is not challenged.

-6-

property. Bayview is a limited liability company organized under the laws of the State of California, of which debtor was a member. A membership interest in a limited liability company is personal property and is not a direct interest in real property owned by the company. Cal. Corp. Code § 17300 ("A membership interest and an economic interest in a limited liability company constitute personal property of the member or assignee").

We also agree that the three most relevant published opinions on this issue in the Ninth Circuit, Stoneking, Chiu, and Weeks v. Pederson (In re Pederson), 230 B.R. 158 (9th Cir. BAP 1999), discussed below, do not address a situation where the debtor's interest in the property at the time the judicial lien fixed was extinguished and replaced by a different interest before the bankruptcy petition is filed. Farrey and a bankruptcy case it cited with favor, Stephens v Walter E. Heller W., Ltd. (In re Stephens), 15 B.R. 485 (Bankr. W.D. N.C. 1981), with facts similar to ours, more directly address the ability of a debtor to avoid the lien using § 522(f).

The issue in Farrey was whether § 522(f) allowed a debtor to avoid the fixing of a lien on a homestead, where the lien was granted to the debtor's former spouse under a divorce decree that extinguished all previous interests the parties had in the property. 500 U.S. at 292. After examining the language of § 522(f)(1) and the purpose and history surrounding Congress' enactment of § 522(f), the Supreme Court stated:

> [I]t is settled that a debtor cannot use § 522(f)(1) to avoid a lien on an interest acquired after the lien attached. See, e.g., In re McCormick, [18 B.R. 911, 913-14 (Bkrtcy. Ct. WD Pa. 1982)]; In re Stephens, 15 B.R. 485 (Bkrtcy. Ct. WD NC 1981); In re Scott, 12

-7-

> B.R. 613 (Bkrtcy. Ct. WD Okla.1981). As before, the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it fixed. If he or she did not, § 522(f)(1) does not permit the debtor to avoid the fixing of the lien on that interest.

500 U.S. at 299.

Under the "critical inquiry" analysis, the Supreme Court found that under controlling nonbankruptcy law the divorce decree (1) extinguished the previous interests of the parties; (2) created a new fee simple interest in the homestead in favor of the ex-husband; and (3) imposed a lien in favor of the ex-wife on that homestead. Under those facts, the Court found that the husband did not have an interest in the property before the ex-wife's lien fixed and, as a result, the husband could not avoid the ex-wife's lien under § 522(f)(1). In the end, the Supreme Court stated: "We hold that § 522(f)(1) requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest." Farrey, 500 U.S. at 301.

The facts in Stephens are remarkably similar to ours. There, judgments were docketed against the debtor while he held title to certain real property. 15 B.R. at 486. The debtor subsequently conveyed the property to his brother. Four days before the debtor filed for bankruptcy, his brother conveyed the property back to him. Id. The bankruptcy court held that the debtor could not avoid the judgment creditors' liens under § 522(f). In so holding, the bankruptcy court reasoned that (1) when the debtor conveyed the property to his brother, it was subject to the creditor's judgment liens; (2) the transfer to

-8-

the debtor's brother divested the debtor of all interest in the subject property; and (3) when the debtor re-obtained the property, he did so subject to the judgment liens.

We examined the reach of Farrey's holding in In re Stoneking, 225 B.R. 690. There, the judicial lien of a creditor fixed on the community property of a husband and wife before the state court awarded the property to the husband in a divorce decree. After the husband filed for bankruptcy, the attorney who held the judicial lien argued that under Farrey, the debtor acquired his interest after the fixing of the lien, and therefore could not avoid it. The bankruptcy court concluded that Farrey was inapplicable under the circumstances and granted the debtor's motion to avoid the lien. Id. at 692.

We affirmed, noting that the facts of the case were distinguishable from those in Farrey. Unlike Farrey, where the lien attached to a newly-created interest which the debtor did not hold before the fixing of the lien because the divorce decree extinguished his prior property interest, the judicial lien in Stoneking fixed upon the debtor's community property interest which, under controlling nonbankruptcy law, was later transformed, not eliminated, when in the course of divorce proceedings the court changed it from a community property interest to a fee interest. Due to this distinction, the Panel held that the debtor could avoid the lien under the "critical inquiry" of Farrey: whether the debtor possessed the interest to which the lien fixed, before it fixed. 225 B.R. at 693.

The Panel reasoned:

While a debtor may not avoid a lien that attached

-9-

before he held _any_ interest in the property, it does not necessarily follow that a debtor cannot avoid a lien merely because his property interests were augmented after attachment of the lien. If a debtor could have avoided such a lien on community-held real property pursuant to section 522(f)(1) before acquiring sole ownership of the property, that debtor should not lose the right to avoid that same lien after acquiring sole ownership . . . . Applying _Farrey_ under such circumstances to preclude the avoidance of a third-party lien "is inconsistent with [section 522(f)'s] main purpose, is not fair, and is contrary to common sense."

_Id._ at 695 (citation omitted). The _Stoneking_ Panel simply did not address a circumstance where the debtor was divested entirely of the interest he held after the lien fixed.

The Ninth Circuit came to a similar conclusion in _Chiu_, albeit on different facts from those in _Stoneking_. In _Chiu_, there was no dispute that the debtors owned the subject property before the lien fixed. Debtors did not avoid the lien during the bankruptcy and subsequently sold the property, at which time they were notified that the lien had to be paid. The debtors reopened their case and filed a motion to avoid the lien, claiming that it impaired their homestead exemption. The bankruptcy court determined that the lien avoidance related back to the date of the filing and granted the motion to avoid the lien. The Panel affirmed on appeal. The Ninth Circuit affirmed, holding that a debtor must possess an interest to which the lien fixed before it fixed and when the bankruptcy petition is filed, but need not possess an interest in the property at the time of avoidance. 304 F.3d at 908-09. The Ninth Circuit in _Chiu_ did not face a situation where the interest the debtors held on the petition date was not the same interest they held when the lien fixed.

-10-

Under a different set of facts, our Panel followed Farrey when it denied the debtor's lien avoidance in Pederson. When creditor Weeks obtained a state court judgment against the debtor in 1993 and recorded an abstract in Contra Costa County, the debtor owned no real property. A year later the debtor acquired title to real property in the county. Under California law, the judgment lien created by the recording of the abstract of judgment attached to her interest in the property when she acquired it. Debtor filed a chapter 13 petition in 1997 and moved to avoid the lien, which the bankruptcy court granted. Relying on Farrey, the Panel reversed because the debtor did not have the property interest to which the lien attached at some time before the lien attached, holding that the critical inquiry was whether the debtor ever possessed the interest to which the lien fixed before it fixed. Pederson, 230 B.R. at 164. Again, although instructive, Pederson described a situation where the debtor never had any interest in the property before the lien recorded, different from this case where debtor had a fee interest when the lien fixed, voluntarily granted it away entirely, then reacquired the fee interest before seeking bankruptcy relief.

Thus, Stoneking, Chiu and Pederson are distinguishable, and Farrey and Stephens control here, because the debtor's interest in the property when he filed bankruptcy was a different and discontinuous interest from the one he held when McCoy's lien affixed. When the interest once held is entirely extinguished by transfer, voluntary or as a matter of law, a judicial lien which attached when a debtor had that interest cannot be avoided

-11-

when the debtor acquires a new interest. The interest held when the lien fixed is gone and the debtor reacquires a different interest subject to the judicial lien, just as McCoy argues.[7]

Beyond Stephens, our holding is consistent with the outcome of several bankruptcy court decisions from other jurisdictions. The trial court in In re Jackaman, 2000 WL 192973 (Bankr. E.D. Pa. 2000), denied lien avoidance where the debtor had sole ownership in real property when the judgment lien fixed but conveyed his fee simple interest to himself and his spouse as tenants in the entirety. The court reasoned that under controlling nonbankruptcy law debtor's prior interest was extinguished by the transfer and his new interest was "different" and would not support avoidance. Relying on Farrey, the court reasoned that § 522(f) only entitles the debtor to avoid the fixing of a lien "on the same interest to which it fixed." Id. at *6.

Similarly, the bankruptcy court in The Cradle Co. v. Banner (In re Banner), 394 B.R. 292 (Bankr. D. Conn. 2008), denied lien avoidance where the debtor owned property in joint tenancy with her then-husband when the lien recorded. After a divorce, the debtor and her ex-husband quitclaimed the property to her boyfriend for financing purposes. Prior to the debtor's bankruptcy petition, her boyfriend deeded a one-half interest in

---

[7] Although Stephens and some other bankruptcy court cases which have decided this issue for the creditors have based their reasoning in part on bad faith or fraudulent conduct of the debtor in conveying the real property, our record does not support a bad faith analysis, nor does our decision rely on any such determination.

-12-

the property back to her and she attempted to use § 522(f) to avoid the impairment on her homestead. Reasoning that the debtor reacquired her interest in the property subject to the judicial lien, the bankruptcy court found under controlling nonbankruptcy law the new interest was not the "same" interest held when the lien affixed and avoidance was not allowed. <u>Id.</u> at 306-07. The court relied on <u>Farrey</u> and <u>Jackaman</u> to support its decision.

Because we reverse on the reasoning above, we need not address in any detail McCoy's argument that his judicial lien became a consensual lien when Bayview took a fee title interest in the property subject to McCoy's lien. Suffice it to say we do not find the argument persuasive. Here, the origin of McCoy's lien was through the legal process. A "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36). Therefore, McCoy's lien meets the statutory definition of a judicial lien. Finally, there is no evidence in the record to support a voluntary and contractually binding agreement between Bayview and McCoy regarding his lien. Rather, the record suggests that Bayview took the property subject to the lien not because of any agreement, but by operation of law. McCoy's lien remained on the property until it was satisfied. CCP § 697.390. Accordingly, because McCoy's lien is a judicial lien, the third condition for the avoidance of McCoy's lien has been met. However, as analyzed above, the first prong was not.

## VI.  CONCLUSION

In this case, debtor transferred and then reacquired his

-13-

interest in the real property after McCoy's lien fixed. Under applicable nonbankruptcy law, this meant that the debtor had no interest in the property in the interim. He thus acquired a different interest - one to which a lien had already affixed - when he later reacquired the property. As a result, debtor may not avoid the lien under § 522(f)and we REVERSE.